UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------- X
                                 :    10 Civ. 8159 (DLC)
RFP LLC,                         :
                  Plaintiff,     :    OPINION & ORDER
                                 :
         -v-                     :
                                 :
SCVNGR, INC.,                    :
                  Defendant.     :
                                 :
-------------------------------- X

APPEARANCES:

For the plaintiff:
Brian D. Caplan
Jonathan James Ross
Caplan & Ross, LLP
270 Madison Avenue
13th Floor
New York, NY 10016

For the defendant:
Brian Paul Bialas
Julia Huston
Foley Hoag LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, MA 02210
-and-
Gregory Paul Gulia
Vanessa C. Hew
Duane Morris, LLP
1540 Broadway
New York, NY 10036-4086

DENISE COTE, District Judge:

    Plaintiff RFP LLC ("RFP") asserts claims in this action

arising under the Lanham Act, 15 U.S.C. §§ 1051 et seq., and New

York General Business Law §§ 349 & 360-L, as well as common law

claims of trademark infringement, trademark dilution, unfair

competition and cyperpiracy.  Defendant SCVNGR, Inc. ("SCVNGR")
has filed counterclaims against RFP and a third-party complaint
against Barry Rosenbloom ("Rosenbloom"), the president of RFP.
The counterclaims and third-party complaint have two claims in
common -- tortious interference with a business relationship and
deceptive acts and practices under New York General Business Law
§ 349 ("Section 349").  RFP and Rosenbloom (collectively,
"Counter-Defendants") have moved to dismiss these two claims.
For the following reasons, the motion is granted.


BACKGROUND

     The following facts are undisputed unless otherwise noted.
RFP was the sponsor or licensor of a scavenger hunt under the
trademark RACE FOR THE ROCK ("the Mark") on or around
Valentine's Day each year between 2003 and 2008.  In these
scavenger hunts, participants vied for a grand prize of an
engagement ring.  RFP did not use the Mark in connection with a
scavenger hunt around Valentine's Day in 2009 or 2010.  SCVNGR
alleges that RFP did not intend to resume use of the Mark after
March 2008 and that consumers do not associate the Mark with
RFP.  SCVNGR therefore claims that RFP has abandoned its rights
to the Mark.

     In the fall of 2010, RFP discovered that SCVNGR was
promoting scavenger hunt contests under the name "Race for the

Rock" in which the goal was also to win an engagement ring.  One
of these contests took place on October 9, 2010 in Bloomington,
Illinois (the "Bloomington Event") through a business
relationship between SCVNGR and Bremer Jewelry ("Bremer").  On
September 17, 2010, Rosenbloom spoke with the Chief Operating
Officer of SCVNGR, Michael Hagan, and advised him that RFP owned
the trademark rights to the Mark.  On September 21, 2010, RFP,
through counsel, sent a letter to SCVNGR, asserting its rights
to the Mark.  The letter described the nature of RFP's claim to
the Mark -- federal registration -- and appended a copy of RFP's
registration certificate.  The letter alleged that SCVNGR's
ongoing and planned uses of the Mark were not authorized by RFP
and infringed on its trademark rights.  The letter ended with a
demand that SCVNGR cease and desist from all further infringing
uses of the Mark.

     On October 6, 2010, RFP, through counsel, sent a similar
cease-and-desist letter with almost identical wording to Bremer.
Bremer subsequently informed SCVNGR by letter that it had
received the letter from RFP.  In the letter, Bremer informed
SCVNGR that it had taken steps to remove the Mark from its own
website and from advertisements and promotions within its
control.  Bremer requested that SCVNGR assist it in removing all
other uses of the Mark from promotion of the Bloomington Event
within SCVNGR's control.  SCVNGR did not take any steps to

remove the Mark from promotional or marketing material
maintained for the event, including the "bloomingtonraceforthe
rock.com" website.

RFP filed the complaint in this action on October 27, 2010.
SCVNGR filed its answer, counterclaims and a third-party
complaint against Rosenbloom on November 19.  Counter-
Defendants' motion to dismiss SCVNGR's third and fourth
counterclaims and the third-party complaint against Rosenbloom
was filed on December 30.  The motion to dismiss was fully
submitted on February 10, 2011.


DISCUSSION

Counter-Defendants have moved to dismiss SCVNGR's
counterclaims and third-party complaint claims that they
tortiously interfered with SCVNGR's business relationship with
Bremer and engaged in deceptive acts or practices.[1]  On a motion
to dismiss the court must "accept all allegations in the
complaint as true and draw all inferences in the non-moving
party's favor."  LaFaro v. New York Cardiothoracic Group, PLLC,
570 F.3d 471, 475 (2d Cir. 2009) (citation omitted).  The court
is "not bound to accept as true legal conclusions couched as

---

[1]    Expressing some confusion as to the nature of the first
claim, Counter-Defendants contend that SCVNGR has failed to
properly allege the elements of tortious interference with a
contract, a business relationship or a prospective economic
advantage.

factual allegations.  Only a complaint that states a plausible
claim for relief survives a motion to dismiss." <u>Id.</u> at 475–76
(citing <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1950–51 (2009)).  A
complaint must do more than offer "naked assertions devoid of
further factual enhancement." <u>Iqbal</u>, 129 S.Ct. at 1949
(citation omitted).

I.   Tortious Interference

The elements of tortious interference with a business
relationship are "(1) the plaintiff had business relations with
a third party; (2) the defendant interfered with those business
relations; (3) the defendant acted for a wrongful purpose or
used dishonest, unfair, or improper means; and (4) the
defendant's acts injured the relationship." <u>Catskill Dev.,</u>
<u>L.L.C. v. Park Place Entm't Corp.</u>, 547 F.3d 115, 132 (2d Cir.
2008) (citation omitted).[2]  Counter-Defendants do not appear to
dispute that SCVNGR and Bremer had a business relationship or
that their actions caused at least some form of interference
with this relationship.  But SCVNGR has failed sufficiently to

---

[2]   SCVNGR stipulates in its opposition papers what is clear
from its pleadings, that its claim is for tortious interference
with an existing business relationship, not tortious
interference with a contract.  Tortious interference with a
business relationship is sometimes called "tortious interference
with prospective economic advantage"; no matter the term used,
the elements are the same. <u>PPX Enters. v. Audiofidelity</u>
<u>Enters.</u>, 818 F.2d 266, 269 (2d Cir. 1987), <u>abrogated on other</u>
<u>grounds by</u> <u>Hannex Corp. v. GMI, Inc.</u>, 140 F.3d 194, 206 (2d Cir.
1998).

allege either wrongful purpose or means or injury.  Therefore,
the tortious interference counterclaim and third-party complaint
claim are dismissed.

A.   Wrongful Purpose or Means

A claim of tortious interference with prospective economic
advantage requires a showing of "interference with business
relations existing between the [claimant] and a third party,
either with the sole purpose of harming the [claimant] or by
means that are dishonest, unfair or in any other way improper."
PPX Enters., 818 F.2d at 269 (citation omitted).  If there are
"no allegations in the complaint capable of supporting a
reasonable inference that any . . . defendant acted with the
sole purpose of harming the plaintiff or used dishonest, unfair,
or improper means," then the claim should be dismissed.  Premium
Mortg. Corp. v. Equifax, Inc., 583 F.3d 103, 107 (2d Cir. 2009)
(citation omitted).

1.   Sole Purpose of Harming Plaintiff

To properly plead a wrongful purpose, SCVNGR would need to
plausibly allege that Counter-Defendants' actions were "for the
sole purpose of inflicting intentional harm" on SCVNGR.  Carvel
Corp. v. Noonan, 3 N.Y.3d 182, 190 (2004) (citation omitted).
If Counter-Defendants' "interference [was] intended, at least in
part, to advance [their] own competing interests," then there
was no "wrongful purpose."  PPX Enters., 818 F.2d at 269.

The claim of tortious interference arises from the cease-and-desist letter that RFP sent to Bremer.  SCVNGR alleges in a conclusory manner that Counter-Defendants' "conduct was commissioned with the sole purpose of harming SCVNGR, [and] rises to the level of malice," but provides no factual enhancement that could support the allegation that RFP's letter to Bremer was made "for the sole purpose of harming SCVNGR."  To the contrary, the only plausible inference to be made from the pleadings is that the Counter-Defendants were motivated at least in part by their own economic interest.  SCVNGR admits that RFP has a registered trademark in the Mark, and had used the Mark as recently as February 2008, twenty-one months before the letter was sent.  The letter RFP sent to Bremer is nearly identical to the one sent to SCVNGR a few weeks earlier.  As significantly, the letter to Bremer asserted a defense of RFP's trademark rights, and did not convey any message requesting that Bremer stop doing business with SCVNGR or cancel the Bloomington Event.  The only plausible inference to be drawn from the face of the pleadings and the plain language of the letters incorporated by them is that the Counter-Defendants reached out to Bremer at least in part to advance their interest in the Mark.

SCVNGR argues that Bremer's "drastic reaction" to the letter makes it "highly likely that additional communications" between Bremer and the Counter-Defendants occurred.  It is

unclear to what "drastic reaction" SCVNGR is referring, as the
only reaction that SCVNGR alleges, a letter from Bremer to
SCVNGR seeking to avoid possible trademark infringement
liability, is quite reasonable in context.  More importantly,
SCVNGR does not allege with any specificity that there were any
other communications between Counter-Defendants and Bremer, or
what their form or content might have been.  SCVNGR's argument
as to wrongful purpose, therefore, relies on "mere suspicions[,
which] are inadequate to support a claim for tortious
interference with business relations."  Scutti Enters., LLC v.
Park Place Entm't Corp., 322 F.3d 211, 217 (2d Cir. 2003).

   2.  Wrongful Means

  The wrongful means requirement is similarly demanding.
Catskill, 547 F.3d at 132.  "[C]ommission of a crime or an
independent tort clearly constitutes wrongful means, [but] such
acts are not essential to find wrongful means."  Id. (citation
omitted).  Wrongful means can also include "physical violence,
fraud or misrepresentation, civil suits and criminal
prosecutions, and some degrees of economic pressure."  Scutti
Enters., 322 F.3d at 216 (citation omitted).  "[L]itigation or
the threat of litigation," is a wrongful means if (1) "the
[claimant] has no belief in the merit of the litigation" or, (2)
"having some belief in the merit of the suit, [the claimant]
nevertheless institutes or threatens to institute litigation in

bad faith, intending only to harass the third parties and not to bring his claim to definitive adjudication." Universal City Studios, Inc. v. Nintendo Co., Ltd., 797 F.2d 70, 75 (2d Cir. 1986) (citation omitted).

SCVNGR argues that the Counter-Defendants' actions constituted wrongful means because the letter from RFP to Bremer constituted both a misrepresentation to Bremer and a wrongful threat of litigation.  Both arguments rely on the assumption that Counter-Defendants did not actually believe that RFP had trademark rights in the Mark,[3] something which SCVNGR has not alleged.  SCVNGR does allege that RFP did not intend to resume use of the Mark after February 2008 and that the Counter-Defendants "falsely claimed to have valid trademark rights" in the Mark.  But these claims are conclusory and do not create any plausible inference that the Counter-Defendants knew that RFP -- the owner of a registered trademark -- had no rights to the Mark.  Although the knowledge of the Counter-Defendants is generally an issue that would be determined as a matter of fact,

---

[3]      "In order to prevail on a fraudulent misrepresentation claim under New York law, a plaintiff must show that: (1) the defendant made a false representation of a material fact; (2) with knowledge of its falsity; (3) with scienter, namely an intent to defraud the plaintiff; (4) and upon which plaintiff justifiably relied; (5) thereby causing damage to the plaintiff."  Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc., 187 F.3d 229, 239 (2d Cir. 1999) (citation omitted) (emphasis supplied).

dismissal is appropriate where, as here, such a critical factual allegation is asserted as a legal conclusion and without sufficient allegations to make it plausible.  Iqbal, 129 S.Ct. at 1949.  In particular, and without drawing any conclusions as to the merits of RFP's infringement claim, 15 U.S.C. § 1127, which SCVNGR argues applies to RFP's alleged abandonment of its trademark rights to the Mark, specifies that a prima facie claim of abandonment can be made once a trademark owner has not used a mark for three consecutive years.  Here, SCVNGR has alleged that less than two years had elapsed between RFP's last use of the Mark and its alleged tortious conduct.[4]

    In light of RFP's potentially valid intellectual property right, Counter-Defendants' actions taken to inform others that they may be participating in infringement of that right, and might face legal consequences for that infringement, are not tortious interference.  Shapiro & Son Bedspread Corp. v. Royal Mills Assocs., 764 F.2d 69, 75 (2d Cir. 1985).  Unlike in Universal City Studios, in which the Second Circuit found that some cease-and-desist letters alleging trademark infringement

---

[4]    In its Opposition, SCVNGR alleges that Counter-Defendants would have known that they had no trademark rights since "RFP has abandoned any rights it may have had nearly three years before."  There is no support in the pleadings or briefing on the motion to dismiss to support this reference to three years. The counterclaims state that the last use of the Mark was in February 2008, less than two years before RFP sent the letter to Bremer in October 2010.

and threatening litigation were tortious interference with the
relationship between a company and its licensees, there is no
allegation that RFP has a long history of litigation that would
lead one to conclude that "if anyone knew what the law was"
regarding its lack of trademark rights, "it was [RFP]."
Universal City Studios, 797 F.2d at 75.  Also unlike the party
alleging trademark rights in Universal City Studios, here there
is no allegation that RFP has declined to pursue trademark
claims against other parties which infringed its rights or
intended to "use[] litigation and the threat of litigation
merely to obtain quick settlement payments from third parties."
Id. at 76.

SCVNGR argues that should only certain types of "more
culpable" misrepresentations constitute a wrongful means, then
the misrepresentation that it alleges the Counter-Defendants
made to Bremer certainly would qualify.  As mentioned above,
even if it is ultimately shown that RFP did not actually have
any rights to the Mark in October 2010, the pleadings do not
lend themselves to a plausible inference that the Counter-
Defendants believed that RFP had no such rights when the letter
was sent.

B.   Injury

There is a second reason why this claim fails.  In order to
state a tortious interference claim, one must also allege that

"the defendant interfered with some contract or business
relation between the plaintiff and someone else." PPX Enters.,
818 F.2d at 270 (citation omitted).  Where "the underlying
business relations remained undisturbed," a claim for tortious
interference is "fatally defective." Id.  Interference that
does not rise to the level of a breach of agreement or severance
of the relationship does not amount to an injury sufficient to
make a tortious interference claim.  Id.

Before the Counter-Defendants' alleged interference, there
was an existing business relationship between SCVNGR and Bremer,
and the pleadings only describe that this relationship included
an effort to organize and promote the Bloomington Event.
Although SCVNGR does make the bare allegation that it "suffered
injury to its business relationship with Bremer," it has not
alleged that Bremer stopped working with it or pulled out of the
Bloomington Event.  In fact, SCVNGR does not allege that the
Bloomington Event was cancelled, and a plain reading of the
pleadings strongly implies that the Bloomington Event was hosted
by Bremer and SCVNGR in October 2010.[5]

---

[5]   The website for that event referenced in the complaint,
which SCVNGR admits in its answer that it registered, advertises
that an event called the "Bremer Race of the Rock" took place,
and shows the SCVNGR and Bremer logos side by side.  Bremer Race
for the Rock, http://www.bloomingtonracefor therock.com (last
visited May 3, 2011).

SCVNGR's only allegation as to injury was that Bremer removed the Mark from the promotional material it controlled and requested that SCVNGR do the same.  Rather than causing a breakdown in the business relationship between Bremer and SCVNGR, the Counter-Defendants' interference left the underlying relationship undisturbed.  SCVNGR does not present any additional argument as to how it has sufficiently alleged injury in its opposition to the motion to dismiss.  The allegations are therefore insufficient to support the injury element of the tortious interference claim.

II.  Deceptive Acts and Practices Under Section 349

SCVNGR also argues that the Counter-Defendants engaged in deceptive acts or practices when they made allegedly false statements to Bremer about RFP's rights in the Mark and demanded that Bremer cease and desist from using the Mark.  "To maintain a cause of action under § 349, a plaintiff must show: (1) that the defendant's conduct is consumer-oriented; (2) that the defendant is engaged in a deceptive act or practice; and (3) that the plaintiff was injured by this practice."  Wilson v. Northwestern Mut. Ins. Co., 625 F.3d 54, 64 (2d Cir. 2010) (citation omitted).  Assuming, without deciding, that Counter-Defendants' conduct -- in this case RFP's communication with Bremer -- was a "deceptive act" because it would "mislead a reasonable consumer acting reasonably under the circumstances,"

Spagnola v. Chubb Corp., 574 F.3d 64, 74 (2d Cir. 2009)
(citation omitted), SCVNGR's claim still fails because it does
not adequately allege that this deceptive act was directed
towards consumers.

"[T]he gravamen of a § 349 claim is consumer injury or
harm to the public interest." City of New York v. Smokes-
Spirits.com, Inc., 541 F.3d 425, 455 (2d Cir. 2008) (citation
omitted). "The critical question, then, is whether the matter
affects the public interest in New York, not whether the suit is
brought by a consumer or a competitor." Securitron Magnalock
Corp. v. Schnabolk, 65 F.3d 256, 264 (2d Cir. 1995).[6]   The
"consumer-oriented" requirement may be satisfied by showing that
the conduct at issue "potentially affects similarly situated
consumers." Wilson, 625 F.3d at 64 (citation omitted).
"Although consumer-oriented conduct does not require a
repetition or pattern of deceptive conduct, a plaintiff must
demonstrate that the acts or practices have a broader impact on
consumers at large. Id. (citation omitted).

In its counterclaims and third-party complaint, SCVNGR has
only alleged that the Counter-Defendants directed their conduct
at Bremer, which is only one consumer of SCVNGR's services.

---

[6]     SCVNGR is correct that it has standing to bring this claim
as a competitor of RFP, and the fact that the dispute is between
two businesses does not bar the claim. Securitron, 65 F.3d at
264.

There is no allegation that the Counter-Defendants' "deceptive act," the alleged misrepresentation conveyed in RFP's communication with Bremer, was conveyed to the public at large.

SCVNGR argues in its opposition to this motion that the removal of "Race for the Rock" from promotional materials for the Bloomington Event would have affected the public's perception and participation in the event.  First, this argument is entirely unsupported by the pleadings because, as SCVNGR admits in its answer -- and as evidenced by the website referenced in the complaint -- the Mark was used at the Bloomington Event despite RFP's cease-and-desist letter and Bremer's request to remove the Mark from such materials. Therefore, it was not forced to remove the Mark from advertisements and the only plausible inference is that consumers saw the Mark used in connection with the Bloomington Event.

Second, even if the Mark had actually been removed from the Bloomington Event materials, this would not have caused consumers at large, incorrectly or not, to believe that RFP had rights to the Mark or that SCVNGR had no rights to the Mark. Rather, had the Mark been removed, this would not have provided consumers at large with any information, whether true or not, about any party's rights to the Mark.  The alleged misrepresentation itself, therefore, ended with Bremer and

SCVNGR.  In the absence of any allegation or plausible inference
that the Counter-Defendants' alleged misrepresentation was
intended to deceive consumers at large, this claim must fail.
Id. at 65 (Section 349 claim failed where deceptive conduct was
directed at only one consumer); see also Maurizio v. Goldsmith,
230 F.3d 518, 521-22 (2d Cir. 2000) (Section 349 claim failed
where there was no showing that author's claim of sole
authorship of book was intended to deceive consumers at large).

     The consumer-oriented requirement of SCVNGR's Section 349
claim is also not satisfied because there is no allegation that
even a single consumer in the State of New York was the target
of the Counter-Defendants' allegedly deceptive conduct.  The
consumer protection provided by Section 349 was intended to
apply only to New York consumers and not designed to conflict
with the consumer protections provided by other states, as
evidenced by the language of the statute and legislative
history.  Goshen v. Mutual Life Ins. Co. of New York, 98 N.Y.2d
314, 324-25 (2002).  Therefore, "the transaction in which the
consumer is deceived must occur in New York."  Id. at 324.

     In support of its Section 349 claim, SCVNGR alleges that
members of the public would be harmed by RFP's alleged
misrepresentation and demand for the Mark to not be used in
connection with the Bloomington Event.  But no allegation
supports and no plausible inference can be made that deceptive

acts that might affect potential attendees of a contest taking place in Bloomington, Illinois would affect consumers in New York.  Furthermore, there is no allegation that Bremer, the addresses of which are listed in the letter referenced by SCVNGR as Peoria and Bloomington, Illinois, was deceived in New York.

CONCLUSION

Counter-Defendants' December 30, 2010 motion to dismiss the counterclaims and the third-party complaint alleging tortious interference with a business relationship and deceptive acts and practices under Section 349 is granted.

SO ORDERED:

Dated:     New York, New York
           May 12, 2011

_____

DENISE COTE
United States District Judge